The Chief Justice delivered the opinion of the court.
A writ of certiorari was sued out of this court to remove hither an action in a plea of trespass on the case, instituted by Martin Chandler against the president, directors and company, of the Monmouth Bank, in the inferior Court of Common Pleas of the county of Monmouth, and depending in that court. Upon the return of the writ a motion was made to quash it as improvidently issued; and the case presents for our determination the question whether a writ of certiorari will lie, to remove into this court, before trial, a common law action, depending in an inferior court of Common Pleas.
The argument in support of the writ, is, in substance, that although not common nor usual, yet the writ is proper on common law principles, and in the court of King’s Bench in England; that the use of it here has not been prohibited or abrogated; and that it was therefore lawfully issued, as this court possesses the same general jurisdiction as the .three great common law courts of Westminster Hall.
After the surrender of the powers of government by the proprietors to Queen Anne, in 1702, and before the abolition of the regal authority, several ordinances were made by the *102] provincial *governors, for the establishment and regulation of the courts of the colony. These ordinances were founded on the powers given to the first regal governor, Lord Oornbury, by his commission from the queen, which was considered as the basis of the authority of the subsequent governors. “And do give and grant unto you full power 'and authority, with the advice and consent of our said council, to erect, .constitute and establish, such and so many courts of judicature and public justice, within our said province, under your government,' as you and they shall *129 think fit and necessary, for the hearing and determining of all causes, as well criminal as civil, according to law and equity, and for awarding execution thereupon, with all reasonable and necessary powers, authorities, foes and privileges, belonging unto them.” Leam. and Spicer, 651. On the present occasion it will not be necessary to look into any of those ordinances, earlier than that of the first of August, 1751, entitled, “An ordinance respecting the Supreme Court,” (Book A. A. A. of commissions, &a., 313, Secretary’s office. 1 Halst. app. 6), which remained in force on the second day of October, 1776, when the act passed, entitled “ an act to confirm and establish the several courts of justice within the state.” Patt. 39.
By this ordinance the Supreme Court is empowered “ to have cognizance of, to hear, try and determine, all pleas, civil, criminal and mixed, as fully and amply as all or any of the courts of King’s Bench, Common Pleas, or Exchequer, in that part of the kingdom of Great Britain called England, have, or of right ought to have; and any person or persons may commence and prosecute any action or suit in our Supreme Court, and may, by habeas corpus, certiorari, or any other legal writ, remove any action, suit or plaint, out of any of the respective county courts, sessions of the peace, or any other inferior court depending or to be depending, and any judgment thereupon given or to be given, in any of the said courts; provided always, that the commencing and prosecuting any action, suit or plaint in the said Supreme Court, and the removal of any information, indictment or causo, matter or thing, be so commenced, prosecuted and removed, according to, and, as near as may be, agreeably to the laws in force in that part of the kingdom of Great Britain called England, and the laws of our province of New Jersey not repugnant thereto.”
*In the construction of this clause, the writs of [*103 habeas corpus and certiorari, and other legal writs, being mentioned, it is manifest that each is to be referred to its *130 appropriate office, and not extended indiscriminately to the removal of causes; for otherwise the habeas corpus might be employed for the removal of indictments pending, and of judgments given, in the inferior courts. It will be seen also, that causes are to be removed, as near as may be, agreeably to the laws in force in England, or, in other words, conformably to the practice of the English courts. How 'it is very certain, that whatever may have been the theoretical opinion, in practice the certiorari was very rarely, and the habeas corpus almost exclusively, used for the removal of causes from inferior courts of record. Archbold (2 Archb. pr. 169) says, “ The writ of certiorari seldom occurs in practice in civil cases. The writ of habeas corpus cum causa, being the one uniformly sued out to remove causes from inferior courts of record.” In the case of Highmore v. Barlow, Barnes 421, a writ of certiorari to remove an ejectment from the Mayor’s Court of London was quashed. “ The practice appearing to be, that in ejectment a writ of habeas corpus is the proper process to remove, and not a writ of certiorari.” Erom these considerations it may be justly inferred that the true construction of the ordinance is, to authorize a certiorari to remove an information or indictment, and an habeas corpus to remove a civil action; such being “ as near as may be, agreeable to the laws in force in England.” This construction is strengthened, if not confirmed and established, by the unvarying practice, since the ordinance, thus to use those writs, and by the uniform course of legislation in respect to the removal of causes. Hot an instance of the use of the writ of certiorari to remove a civil action at common law was mentioned on the argument at the bar. Hot an instance, it is believed, is to be found on the records of this court. Surely the contended propriety of the certiorari could not have so long escaped the astuteness of the profession, more especially within the last twenty-five 'years, when the use of the habeas corpus has been so much straitened. A steady undisputed course- *131 of practice for three quarters of a century, cannot fall far short of the weight of an express adjudication. Let us review the course of legislation. In the year 1797, when the abuse of the power of removal by the presentation of a writ after the jury were convened for the trial, required restraint, by the sixth section of an act *ontitled “ an [*104 act relative to proceedings in the courts of law,” it is enacted “ that no action shall bo removed from any of the Courts of Common Pleas to the Supreme Court by writ of Habeas Corpus, after a plea has been filed.” Was not the manifest design of the legislature to prevent a removal, after that period ? The evil existed in the removal not in the mode whereby it was effected. If any other mode of removal had then existed, the legislature would not have made a provision, useful in itself, and earnestly demanded by public convenience, which might be so readily evaded as by the alteration of a few words of form, and the adoption of another name. In the act of 9th November, 1797, which is entitled “ an act to prevent suits under a certain sum being brought in the Supreme Court,” it is provided “ that no suit commenced in any of the inferior Courts of Common Pleas shall bo removed by writ of habeas corpus into the said Supremo Court, unless the debt, damages, matter or thing in controversy shall exceed two hundred dollars ; that no writ of habeas corpus for the removal of a cause shall bo received by the inferior Court of Common Picas to which it may be directed, nor shall any cause be removed by such writ, after issue joined upon matter of law or of fact.” And “ that if any cause be removed or stayed by writ of habeas corpus, and afterwards be remanded or sent back by writ of procedendo, or other writ, the same cause shall never again be removed or stayed by any writ of habeas corpus.” All these provisions are certainly intended to apply to the removal of the cause. It is true, the term, habeas corpus, is used, because the legislature intended to regulate removals prior to judgment, and by that mode such *132 removals were effected. We cannot suppose the legislature meant to prohibit the removal of a cause under two hundred dollars by habeas corpus, and yet suffer it to be removed by certiorari; or that the latter was left to be used after issue joined, although the former might not be; or that a cause remanded after the one writ might be again removed by the other. The removal itself was the object of legislation in all these particulars, and the expression of the name serves to shew a legislative declaration that such was the writ whereby, exclusively, such removal was obtained.
The consequences which would result from sustaining this writ cannot be overlooked on the present enquiry. A cause of any amount may be removed into the Supreme Court. It *105] may be removed *after the jury are convened, nay, aftér the plaintiff has exhibited his evidence. It may be removed as often as it shall be remanded. No recognizance or other security can be required on its removal. Not only suits pending in the Courts of Common Pleas may be removed, but suits may be carried to the Supreme Court, from courts for the trial of small causes, for they are courts of record, and the plaintiffs compelled to forego just demands, or to expend more than their amount in the recovery. Such results ought not to be hazarded to sustain a writ not warranted by the practice of those who have gone before us, and the use of which is not required for the furtherance of justice or convenience, since all legitimate purposes may be attained by the habeas corpus.
Upon the argument at the bar some reliance was placed on the determination of the Supreme Court of New York, in Jackson v. Corley, 14 John. 323, that a certiorari lay to remove an ejectment from the Court of Common Pleas of the city of New York. The propriety of such removal seems to have been placed by the court on their own statute, which is said to put both writs “on the same foot-, ing, and consider them equally efficacious in the removal of a cause.” The statute referred to is in these words — “ that. *133 no writ of habeas corpus or certiorari shall issue out of any court, to remove any prisoner out of any gaol, or to remove any suit or action out of any Mayor’s Court or Court of Common Pleas, or any indictment, presentment, inquisition, judgment, order, record, recognizance or other proceeding, out of any other court, or from before any j ustice or j ustices of the peace, unless the same be allowed and signed by one of the justices of the court out of which the same shall issue.” It does not become us, nor do we intend, to call in question the construction placed by that court on one of their own statutes. If, however, we are compelled to consider it, because of its alleged bearing on the case before us, we can see no obstacle, if both writs are on the same footing and equally efficacious, to the use of the habeas corpus in the removal of an indictment; and we are disposed to believe,- a construction which would operate, reddendo singula singulis, by giving each its ancient and appropriate action, would be most sound and defensible.
We are of opinion that the question presented to us should be answered in the negativo, and that the writ be quashed.